1   **WO**

2

3

4

5

6               **IN THE UNITED STATES DISTRICT COURT**

7                   **FOR THE DISTRICT OF ARIZONA**

8

9   Jesus Analy Benitez Montijo,        )    No. CV-14-264-PHX-SMM
                                        )
10             Plaintiff,               )
                                        )
11  vs.                                 )    **MEMORANDUM OF DECISION**
                                        )          **AND ORDER**
12  Romulus Inc., d/b/a IHOP,           )
                                        )
13             Defendant.               )
                                        )
14  _____       )

15  Sydney Colunga,                     )    No. CV-14-265-PHX-SMM
                                        )
16             Plaintiff,               )
                                        )
17  vs.                                 )
                                        )
18  Romulus Inc., d/b/a IHOP,           )
                                        )
19             Defendant.               )
                                        )
20  _____       )

21  Crystal Sheehan,                    )    No. CV-14-464-PHX-SMM
                                        )
22             Plaintiff,               )
                                        )
23  vs.                                 )
                                        )
24  Romulus Inc., d/b/a IHOP,           )
                                        )
25             Defendant.               )
                                        )
26  _____       )

27

28  *///*

1      Multiple civil actions have been filed under the Fair Labor Standards Act ("FLSA")

2  raising similar legal issues in this District.  In the interest of judicial economy, all twenty-

3  eight of these related FLSA cases were transferred to this Court for the purpose of managing,

4  administrating, and resolving them. (See Montijo, Doc. 22; Colunga, Doc. 20; and Sheehan,

5  Doc. 18.)  In these transferred civil actions, all of the plaintiffs have the same counsel of

6  record prosecuting their complaints.

7      For the purpose of resolving similar motions to amend and similar motions for partial

8  or for summary judgment, the Court has combined the above three captioned cases against

9  Defendant Romulus Inc., d/b/a International House of Pancakes ("IHOP").  The Court will

10  deny leave to amend on Plaintiffs' Counts 1 and 2, rule in favor of IHOP on their motions

11  for partial or for summary judgment on Counts 1 and 2, and deny Montijo's motion for

12  partial summary judgment on Count 2.

13  **BACKGROUND**

14      In each of the above-captioned three related cases, Plaintiffs filed complaints against

15  IHOP. (See Montijo, Doc. 1; Colunga, Doc. 1; and Sheehan, Doc. 1.)  In Montijo, Plaintiff

16  then filed a First Amended Complaint ("FAC"). (Montijo, Doc. 23.)  Colunga's complaint,

17  Sheehan's complaint, and Montijo's FAC all raise two basic allegations in regard to the

18  minimum wage provisions of the FLSA.[1]  (See Montijo, Doc. 23; Colunga, Doc. 1; and

19  Sheehan, Doc. 1.)  They allege an FLSA minimum wage violation because IHOP required

20  them to perform non-tipped duties related to their tipped server occupation in excess of 20%

21  of their working time per shift yet paid at the reduced tip credit rate for performing those

22  duties.  (Id.)  Plaintiffs' examples of non-tipped duties related to their tipped server

23  occupation included the following:

24      preparatory and workplace maintenance tasks such as maintaining "backups,"

25

---

26  [1]Montijo's FAC broke down the two basic allegations that are raised in Colunga's and
Sheehan's complaints and brought them as two separate counts. For ease of reference, in all

27  of the Plaintiffs' complaints, the Court will collectively refer to these two basic allegations
as Counts 1 and 2 even though not separately denominated as such by Colunga or Sheehan.

28  Montijo's FAC also asserts a third count for alleged unpaid wages.

1    restocking supplies, stocking ice, sweeping floors, stocking food/condiments,
2    brewing tea, brewing coffee, running food to tables for other servers, wiping
     down/washing trays, stocking lemonade mix, cleaning soft drink dispenser
3    nozzles, replacing syrup for the soda machine, stocking to-go supplies,
     cutting/stocking lemons, washing plates/glasses/silverware, polishing
4    glassware, maintaining and stocking the salad bar, restocking the beverage
     line, cleaning and organizing the condiment station, and rolling silverware.

5    (See, e.g., Montijo, Doc. 23 at 5.)  Plaintiffs further allege that they were engaged in working

6    dual jobs for IHOP yet IHOP only paying them at the reduced tip credit rate for performing

7    a non-tipped occupation.  (Id.)  Plaintiffs allege that they performed non-tipped non-related

8    duties, such as:

9    taking out trash, scrubbing walls, deep cleaning the pass bar, deep cleaning the
     floors, removing booths and cleaning behind and around them, sweeping
10   carpet throughout the entire restaurant, organizing and cleaning and deep
     cleaning booster seats and high chairs, mopping, rolling out rugs from the
11   hallways and front lobby to sweep clean the rugs and hard floors, cleaning and
     deep cleaning both restrooms, deep cleaning chair bottoms and legs, cleaning
12   vents, cleaning windows, and dusting.

13   (Id. at 7.)

14   In a previous Order addressing similar FLSA arguments, for the purpose of resolving

15   seven motions to dismiss, the Court combined six (6) plaintiffs suing P.F. Chang China

16   Bistro, Inc. and one plaintiff's complaint against Arriba Mexican Grill.  The Court granted

17   defendants' motions and dismissed without prejudice the plaintiffs' minimum wage claims

18   brought under the FLSA.  (See, e.g., Schaefer, No. CV 14-185-PHX-SMM, Doc. 31.)  The

19   Court also provided the plaintiffs with the opportunity to move the Court for leave to amend

20   their complaint.  (See id.)  Finally, the Court forwarded a copy of its Order to all of the

21   parties in the remaining transferred cases.  (Id.)

22   *Plaintiffs' Motions for Leave to Amend*

23   Following this Court's Order in Schaefer, all three Plaintiffs moved for leave to

24   amend their complaints or FAC. (See Montijo, Doc. 28; Colunga, Doc. 30; and Sheehan,

25   Doc. 24.)[2]  The Court has combined the above-captioned three related cases for the purpose

26   

27   [2]All three Plaintiffs' motions omit an accompanying memorandum setting forth the
28   points and authorities relied upon in support of their motion for leave to amend their
     complaint or FAC.  In our District's Local Rules, LR Civ 7.2(b) states: "Unless otherwise

of resolving Plaintiffs' similar motions for leave to amend, and subsequent related motions. The Court has reviewed all of Plaintiffs' motions for leave to amend. (See Montijo, Doc. 28; Colunga, Doc. 30; and Sheehan, Doc. 24.) In Plaintiffs' pending motions for leave to amend, Montijo's proposed SAC and Colunga's and Sheehan's proposed FAC, they all assert the same first two counts. (Id.) In Count 1, alleging a violation of the FLSA's minimum wage provision, they assert a dual jobs claim alleging that they performed non-tipped labor related to their tipped server occupation in excess of 20% of their workweek duties, including:

> maintaining "backups;" sweeping carpet; cleaning sugar caddies, syrups, and salt and pepper shakers; washing cups in the dishwasher; re-stocking the beverage line; cleaning and maintaining the salad bar; cleaning and organizing the condiment station; cleaning and organizing the booster seats and high chairs; cleaning and maintaining the pass bar; moving carpets and sweeping and mopping floors; cleaning and restocking the restrooms; cleaning walls; cleaning booths; rolling silverware; completing the side work chart; cleaning windows; and cleaning, organizing, and re-stocking the to-go station.

(See, e.g., Montijo, Doc. 28-1 at 5.)

In Count 2, also alleging a violation of the FLSA's minimum wage provision, they assert a dual jobs claim asserting that they were performing non-tipped labor unrelated to their tipped occupation, including "sweeping carpet; cleaning and organizing the booster seats and high chairs; moving carpets and sweeping and mopping floors; cleaning and restocking the restrooms; cleaning walls; cleaning booths; completing the side work chart; and cleaning windows." (Id. at 16.)

Both Montijo and Colunga assert a third count for unpaid wages under the FLSA in their proposed amended complaints. (See Montijo, Doc. 28-1, Colunga, Doc. 24-1.)

IHOP opposes amendment of Counts 1 and 2 contending that the proposed FAC and SAC fail to state a minimum wage violation under the FLSA, and therefore granting amendment to file Plaintiffs' proposed complaints would be futile. (Montijo, Doc. 33; Colunga, Doc. 34; and Sheehan, Doc. 27.) IHOP contends that this is not a dual job situation

---

ordered by the court, upon any motion, the moving party shall serve and file with the motion's papers a memorandum setting forth the points and authorities relied upon in support of the motion." All three Plaintiffs failed to follow this District's Local Rules.

1  under the Department of Labor ("DOL") regulations, but rather a situation in which a

2  server—a tipped employee—performed tasks generally assigned to the server occupation at

3  IHOP's restaurants.  (See, e.g., Montijo, Doc. 33 at 5.)

4          Plaintiffs replied in support.  (Montijo, Doc. 34; Colunga, Doc. 35; and Sheehan, Doc.

5  28.)  Even though they were tipped employees, Plaintiffs assert that they were  required to

6  perform tipped labor and non-tipped labor related to their server occupation while being paid

7  the tip credit rate and exceeding 20% of their workweek duties.  (Id.)  Plaintiffs therefore

8  claim that they were working dual jobs yet not properly paid minimum wage for work

9  performed outside the server occupation, thus violating the FLSA.  (Id.)  Plaintiffs further

10 maintain that their performance of non-tipped labor unrelated to their tipped occupation also

11 states a dual jobs FLSA minimum wage violation.  (Id.)  For both dual jobs Counts, they rely

12 on the DOL regulation defining when you are a dual job employee, 29 C.F.R. § 531.56(e),

13 as interpreted by the DOL Field Operations Handbook, sub-regulation § 30d00(e), which

14 asserts that you become a dual jobs employee when a substantial part of your duties, or 20%,

15 is performed on non-tipped duties.   Plaintiffs assert that deference is owed to DOL's sub-

16 regulation, citing Auer v. Robbins, 519 U.S. 452, 461-62 (1997).

17         *Relevant Undisputed Facts*

18         1. All of the Plaintiffs were servers working for IHOP and assigned generally to the

19 graveyard shifts. For the Plaintiffs their graveyard shifts start times varied between 8 p.m.

20 and 11 p.m and ending between 5 a.m and 7 a.m.  (Montijo, Docs. 32 at 2, 32-1 at 18-43;

21 Colunga, Docs. 33 at 1-2, 33-1 at 21-50; Sheehan, Docs. 26 at 1-2, 26-1 at 32-69.)

22         2.  Upon hire at IHOP, all Plaintiffs were employed under IHOP's Server Job

23 Description and received training materials for performing the Server position, which

24 included performance of required side work as specified.  (Montijo, Docs. 30 at 2, 30-1 at

25 32-70; Colunga, Docs. 29 at 1-2, 29-1 at 31-68; Sheehan, Docs. 23 at 1-2, 23-1 at 19-56.)

26         3.  Plaintiffs as tipped employees under the FLSA were paid the Arizona minimum

27 wage of $7.80 an hour, which was higher than the federal minimum wage of $7.25 an hour.

28 IHOP paid tipped employees based on the Arizona tip credit of $3.00 an hour, higher than

the federal tip credit of $2.13 an hour.  (<u>Montijo</u>, Docs. 30 at 2, 30-1 at 8; <u>Colunga</u>, Docs. 29 at 2, 29-1 at 8; <u>Sheehan</u>, Docs. 23 at 1, 23-1 at 3.)

4. All Plaintiffs received minimum wage payments for the workweeks in which they were employed by IHOP. (<u>Montijo</u>, Docs. 30 at 2, 30-1 at 8; <u>Colunga</u>, Docs. 29 at 2, 29-1 at 8; <u>Sheehan</u>, Docs. 23 at 1, 23-1 at 3.)

5. As servers, Plaintiffs performed various duties, including taking orders from customers, responding to customer questions or requests, bringing food to customers, ensuring that their drinks were refilled, and otherwise ensuring a superior customer experience, sweeping or cleaning floors in the dining area, lobby, or bathroom, cleaning and filling condiment dispensers, rolling silverware, restocking the beverage line, cleaning and organizing the condiment station, cleaning walls, cleaning bathrooms, cleaning and organizing high chairs and booster seats, and restocking the to go station. (<u>See, e.g.</u>, <u>Montijo</u>, Docs. 30 at 2 ¶ 5, 32 at 2.)

6. In their positions as servers on the graveyard shift, IHOP required Plaintiffs to regularly and consistently perform tasks that included sweeping the carpet; clean sugar caddies, syrups, and salt and pepper shakers; wash cups in the dishwasher; re-stock the beverage line; clean and maintain the salad bar; clean and organize the condiment station; clean and maintain the pass bar; wash coffee pots and place them on tables; sweep and mop floors; roll silverware; clean and organize high chairs and booster seats; clean restrooms; scrub walls; and perform other duties as assigned.  <u>See, e.g.</u>, <u>Montijo</u>, Docs. 31 at 3-4, 30-1 at 21-25.)

7. In <u>Montijo's</u> and <u>Colunga's</u> answers to interrogatories, they estimated the time they spent on their various side duties.  (<u>Montijo</u>, Doc. 30-1 at 25-26; <u>Colunga</u>, Doc. 29-1 at 25-26.) They estimated that they spent approximately 10 to 20 minutes each shift cleaning and restocking restrooms, and approximately 45 minutes to an hour deep cleaning the restrooms, which only occurred 3 or 4 times during their time of employment with IHOP (Montijo–7 and ½ months, Colunga, 1 year, 3 months, Sheehan, 1 year, 7 months).  (<u>Id.</u> at 26.)  In <u>Sheehan</u>, Plaintiff did not provide specific time estimates regarding her performing the side

1   duties.  (Sheehan, Doc. 23-1 at 14.)

2       *IHOP's Motions for Summary Judgment*

3       At the same time that Plaintiffs moved for leave to amend and lodged proposed

4   amended complaints, IHOP moved for partial summary judgment in Montijo on Counts 1 and

5   2, and for summary judgment in both Colunga and Sheehan, with supporting statements of

6   facts.  (Montijo, Docs. 29, 30; Colunga, Doc. 28, 29; and Sheehan, Doc. 22, 23.)  Plaintiffs

7   have responded and IHOP has replied.  (Montijo, Docs. 31, 32 and 35, 36; Colunga, Docs.

8   32, 33, and 36, 37; and Sheehan, Docs. 25, 26 and 29, 30.)  Subsequently, in Montijo,

9   Plaintiff moved for partial summary judgment on Count 2.  (Docs. 37, 38.)  IHOP has

10  responded and Plaintiff has replied.  (Docs. 39-41.)

11      The Court finds that IHOP's motion for partial summary judgment in Montijo on

12  Counts 1 and 2, and for summary judgment in Colunga and Sheehan are dispositive of the

13  motions pending in this matter.  The Court will grant IHOP's motion for partial summary

14  judgment on Counts 1 and 2 in Montijo, and deny Montijo's motion for partial summary

15  judgment on Count 2.  The Court will grant IHOP's motion for summary judgment on Counts

16  1 and 2 in Colunga; the Court will grant Colunga's motion to amend in part allowing

17  Colunga to add her unpaid wage claim to her complaint.   The Court will grant IHOP's

18  motion for summary judgment in Sheehan and terminate that case.  Based on the reasoning

19  set forth by the Court, the Court will deny Plaintiffs' motions for leave to file amended

20  complaints as futile, except as to adding Colunga's unpaid wage claim, which will proceed.

21                          **STANDARD OF REVIEW**

22      *FLSA*

23      Under the FLSA, employers must pay employees the federal minimum wage "who

24  in any workweek is engaged in commerce or in the production of goods for commerce, or is

25  employed in an enterprise engaged in commerce or in the production of goods for

26  commerce," according to the statutory schedule of the minimum hourly wage.  29 U.S.C. §

27  206(a) (2012).  In 2007, Congress scheduled the federal minimum wage to increase to $7.25

28  an hour by July 2009.  See Fair Minimum Wage Act of 2007, Pub.L. No. 110–28, § 8102(a),

121 Stat. 112, 188 (raising the minimum wage to $5.85 per hour, effective July 24, 2007, to $6.55 per hour, effective July 24, 2008, and to $7.25 per hour, effective July 24, 2009).

Historically, before 1966, the FLSA did not generally apply to employees in restaurants and hotels. As part of a legislative compromise struck in extending the coverage of the FLSA to these industries for the first time, Congress enacted a "tip credit" provision, to accommodate in part the long-standing practice in these industries whereby workers received most or even all of their income from customer tips. See Pub. L. No. 89-601, §§ 101(a), 201(a), 80 Stat. 830, 833 (1966). Legislative history clearly demonstrates that Congress's intent was not to disrupt the restaurant industry's "existing practices with regard to tips." See S. Rep. No. 89-1487, reprinted in 1966 U.S.C.C.A.N. 3002, 3014.

From introduction of the tip credit provisions in 1966 through 1996, Congress set the amounts for the minimum employer cash wage and tip credit as a percentage of the minimum wage, ranging from 40% to 60%. The 1996 FLSA amendments changed the tip credit provisions to set the employer's statutory minimum cash wage obligation to a dollar amount ($2.13 per hour), rather than a percentage of the minimum wage. See Pub. L. No. 104-188, § 2105, 110 Stat. 1755, 1928-29.[3] The maximum tip credit thereafter became the difference between $2.13 and the federal minimum wage. Id. Thus, the tip credit provision of the FLSA, § 203(m), allows employers to pay tipped employees $2.13 per hour if the employees' tips suffice to fulfill his or her minimum wage for the workweek.[4] 29 U.S.C. § 203(m).

---

[3]Prior to the 1996 amendment, employers were required to pay tipped employees a cash wage "by an amount determined by the employer, but not an amount in excess of . . . 50 percent of the applicable minimum wage rate after March 31, 1991." 29 U.S.C. § 203(m) (1994). The minimum wage rate after March 31, 1991 and prior to the 1996 amendments was $4.25 an hour. Thus, prior to the 1996 amendments, employers were required to pay a cash wage of at least $2.13. ($4.25 an hour x 0.50 = $2.125 = $2.13 rounded up).

[4]Arizona has enacted a higher tip credit for employees such that the difference between the wage specified in paragraph (1) of 29 U.S.C. § 203(m) and the wage in effect under § 206(a)(1) is effectively $3.00. A.R.S. § 23-363(C). Thus, Arizona allows employers to take a maximum tip credit of $3.00 against its minimum wage obligations to tipped employees of $7.80 per hour.

Specifically, § 203(m) states:

> In determining the wage an employer is required to pay a tipped employee, the amount paid such employee by the employee's employer shall be an amount equal to—
>
> (1) the cash wage paid such employee which for purposes of such determination shall be not less than the cash wage required to be paid such an employee on August 20, 1996 [i.e., $2.13 per hour]; and
>
> (2) an additional amount on account of the tips received by such employee which amount is equal to the difference between the wage specified in paragraph (1) and the wage in effect under section 206(a)(1) of this title.

29 U.S.C. § 203(m).  Thus, an employer may use a tip credit to determine the wage of a tipped employee if it: (1) pays a cash wage of at least $2.13 per hour; (2) informs its employees of the FLSA's tip credit provisions; (3) permits its employees to retain all their tips (except for permissible tip pooling); and (4) ensures that the cash wage plus the tip credit equal the minimum wage for the forty-hour workweek.  See Roberts v. Apple Sauce, Inc., 945 F. Supp.2d 995, 1000 (N.D. Ind. 2013).

Pursuant to 29 C.F.R. § 531.56(d), "[m]ore than $30 a month in tips customarily and regularly received by the employee is a minimum standard that must be met before any wage credit for tips is determined under [29 U.S.C. § 203(m)]."  Further, 29 C.F.R. § 516.28, requires that an employer keep separate records for tipped and non-tipped occupations. Generally, employers are required to report on an employee W-2, (1) the sum of the hourly wage paid, (2) the cash tips reported by the employee on Form 4070, and (3) the amount shown by the records to have been paid to the employee as charge tips.  See Nat'l Restaurant Assoc. v. Simon, 411 F. Supp. 993, 994 (D. D.C. 1976).  In no event, however, is an employee to receive less than the minimum wage per workweek.

*Summary Judgment*

A court must grant summary judgment if the pleadings and supporting documents, viewed in the light most favorable to the nonmoving party, show "that there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); see Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986); Jesinger v. Nevada Fed. Credit Union, 24 F.3d 1127, 1130 (9th Cir. 1994).  Substantive law determines

- 9 -

1   which facts are material.  See Anderson v. Liberty Lobby, 477 U.S. 242, 248 (1986); see also
2   Jesinger, 24 F.3d at 1130.  "Only disputes over facts that might affect the outcome of the suit
3   under the governing law will properly preclude the entry of summary judgment."  Anderson,
4   477 U.S. at 248.  The dispute must also be genuine, that is, the evidence must be "such that
5   a reasonable jury could return a verdict for the nonmoving party."  Id.; see Jesinger, 24 F.3d
6   at 1130.

7          A principal purpose of summary judgment is "to isolate and dispose of factually
8   unsupported claims."  Celotex, 477 U.S. at 323-24.  Summary judgment is appropriate
9   against a party who "fails to make a showing sufficient to establish the existence of an
10  element essential to that party's case, and on which that party will bear the burden of proof
11  at trial."  Id. at 322; see also Citadel Holding Corp. v. Roven, 26 F.3d 960, 964 (9th Cir.
12  1994).  The moving party need not disprove matters on which the opponent has the burden
13  of proof at trial.  See Celotex, 477 U.S. at 323.  The party opposing summary judgment may
14  not rest upon the mere allegations or denials of the party's pleadings, but must set forth
15  "specific facts showing that there is a genuine issue for trial."  See Matsushita Elec. Indus.
16  Co. v. Zenith Radio, 475 U.S. 574, 586-87 (1986) (quoting Fed. R. Civ. P. 56(e) (1963)
17  (amended 2010)) ; Brinson v. Linda Rose Joint Venture, 53 F.3d 1044, 1049 (9th Cir. 1995).
18  The non-movant's bare assertions, standing alone, are insufficient to create a material issue
19  of fact and defeat a motion for summary judgment.  Anderson, 477 U.S. at 247–48.

20         *Leave to Amend*

21         Leave to amend should be freely given when justice so requires.  See Fed. R. Civ. P.
22  15(a)(2).  Leave to amend may be denied where there is "undue delay, bad faith or dilatory
23  motive on the part of the movant, repeated failure to cure deficiencies by amendments
24  previously allowed, undue prejudice to the opposing party by virtue of allowance of the
25  amendment, [or] futility of amendment."  Foman v. Davis, 371 U.S. 178, 182 (1962).  The
26  Ninth Circuit Court of Appeals has summarized these factors to include the following: (1)
27  undue delay; (2) bad faith; (3) prejudice to the opponent; and (4) futility of amendment.
28  Loehr v. Ventura County Cmty. Coll. Dist., 743 F.2d 1310, 1319 (9th Cir. 1984). Granting

1    or denial of leave to amend rests in the sound discretion of the trial court.  <u>Swanson v. United</u>

2    <u>States Forest Serv.</u>, 87 F.3d 339, 343 (9th Cir. 1996).   Despite the policy favoring

3    amendment under Rule 15, leave to amend may be denied if the proposed amendment is

4    futile or would be subject to dismissal. <u>Saul v. United States</u>, 928 F.2d 829, 843 (9th Cir.

5    1991).

6                                                    **DISCUSSION**

7         *Plaintiffs' Count 1*

8         In Count 1, Plaintiffs allege that as servers for IHOP they spent more than 20% of

9    their time performing non-tipped labor.  As servers, Plaintiffs alleged that they performed the

10   following duties:

> preparatory and workplace maintenance tasks such as maintaining "backups,"
> restocking supplies, stocking ice, sweeping floors, stocking food/condiments,
> brewing tea, brewing coffee, running food to tables for other servers, wiping
> down/washing trays, stocking lemonade mix, cleaning soft drink dispenser
> nozzles, replacing syrup for the soda machine, stocking to-go supplies,
> cutting/stocking lemons, washing plates/glasses/silverware, polishing
> glassware, maintaining and stocking the salad bar, restocking the beverage
> line, cleaning and organizing the condiment station, and rolling silverware.

15   (<u>See, e.g.</u>, <u>Montijo</u>, Doc. 30 at 2.)  Plaintiffs assert that because they spent more that 20% of

16   their time performing side duties–non-tipped duties–they were entitled to the full hourly

17   minimum wage without IHOP taking a tip credit for the hours they spent performing side

18   work.  (<u>Id.</u>, Doc. 31.)  Because they spent more than 20% of their time performing side

19   duties, they claim that they were working dual jobs yet not properly paid minimum wage for

20   work performed outside the server occupation, thus violating the FLSA. (<u>Id.</u>) Plaintiffs rely

21   on the DOL regulation defining when you are a dual job employee, 29 C.F.R. § 531.56(e),

22   as interpreted by the DOL Field Operations Handbook, sub-regulation § 30d00(e),[5] which

23

24        [5]The DOL sub-regulation, U.S. Dept. of Labor, Wage and Hour Division, Field
25   Operations Handbook, § 30d00(e) (1988), provides, as follows:

> [C.F.R. §] 531.56(e) permits the taking of the tip credit for time
> spent in duties related to the tipped occupation, even though
> such duties are not by themselves directed toward producing tips
> (i.e., maintenance and preparatory or closing activities). For
> example a waiter/waitress, who spends some time cleaning and

asserts that you become a dual jobs employee when a substantial part of your duties, or 20%, is performed on non-tipped duties.

IHOP contends that Plaintiffs are tipped employees and that pursuant to the FLSA it is entitled to take a tip credit for wages paid to its servers on a workweek basis. (See, e.g., Montijo, Doc. 29.) Therefore, even if Plaintiffs spent more that 20% of their workweek time performing side work, they are not entitled to additional monies for the hours they spent performing side work. (Id.)

Based on 29 U.S.C. § 206(a) and 29 C.F.R. §§ 531.51, 531.56(e), IHOP contends that Count 1 is subject to dismissal. (Id.) IHOP maintains that the DOL regulation specifically provides that servers perform incidental duties in addition to their normal duties as a server. (Id. (citing C.F.R. § 531.56(e).)  IHOP contends that there is no FLSA violation because it is undisputed that Plaintiffs are tipped employees and that IHOP always paid them the higher Arizona minimum wage for all of their workweeks as IHOP employee. (Montijo, Docs. 30 at 2, 30-1 at 8; Colunga, Docs. 29 at 2, 29-1 at 8; Sheehan, Docs. 23 at 1, 23-1 at 3.)

*No Minimum Wage Violation*

The Court finds that Plaintiffs' allegations regarding the DOL sub-regulations' 20% rule fails to state a minimum wage claim under the FLSA.  The provisions of the FLSA govern the basis for asserting a claimed violation of federal minimum wage.  The Supreme Court has emphasized the importance of companies paying an employee's minimum wage on a weekly basis. See Brooklyn Sav. Bank v. O'Neil, 324 U.S. 697, 707 (1945) (stating that

---

> setting tables making coffee, and occasionally washing dishes or glasses may continue to be engaged in a tipped occupation even though these duties are not tip producing, provided such duties are incidental to the regular duties of the sever (waiter/waitress) and are generally assigned to the servers. However, where the facts indicate that specific employees are routinely assigned to maintenance, or that tipped employees spend a substantial amount of time (in excess of 20 percent) performing general preparation work or maintenance, no tip credit may be taken for the time spent in such duties.

1    "employees receiving less than the statutory minimum are not likely to have sufficient

2    resources to maintain their efficiency and well-being"); see also Barrentine v. Arkansas-Best

3    Freight System, Inc., 450 U.S. 728, 739 (1981).  Under 29 U.S.C. § 206, the FLSA requires

4    that for every workweek "every employer shall pay to each of [its] employees," the federal

5    minimum wage, except for tipped employees, who receive $2.13 an hour, with the rest of

6    their federal minimum wage coming from customer tips.  See  29 U.S.C. § 206(a)(1), §

7    203(m), and § 203(t).  Thus, under § 203(m)'s tip credit, employers may pay tipped

8    employees at an hourly wage below the minimum wage, provided that for the workweek the

9    hourly wage and the employees' tips, taken together are at least equivalent to the federal

10   minimum wage, which in 2012 and 2013 was $7.25 an hour.

11        The Supreme Court has also made it clear that an employment practice does not

12   violate the FLSA unless the FLSA prohibits it. See Christensen v. Harris Cnty., 529 U.S.

13   576, 588 (2000).  The FLSA creates a private right of action against any employer who

14   violates § 206 (the minimum wage requirement) or § 207 (the overtime compensation

15   requirement).  See 29 U.S.C. § 216(b).  Section 216(b) permits employees to recover from

16   the employer "the amount of their unpaid minimum wages, or their unpaid overtime

17   compensation."  Id.

18        The Court finds that whether Plaintiffs are able to state a FLSA minimum wage

19   violation depends on the total pay for the workweek divided by the total number of hours

20   worked in that workweek. This "workweek" concept is well-supported in the caselaw,

21   starting with the seminal case of United States v. Klinghoffer Bros. Realty Corp., 285 F.2d

22   487 (2d Cir. 1961).  In Klinghoffer, employees who had not been paid for certain hours

23   worked claimed a violation of the FLSA's minimum wage provision. The Klinghoffer court

24   found that:

25         [i]f the total wage paid to each [employee] in this case during any given week
           is divided by the total time he worked that week, the resulting average hourly
26         wage exceeds [the minimum wage required by the FLSA]. We believe this is
           all that is necessary to meet the requirements of 206(a).

27   Id. at 490.  The Ninth Circuit has followed the "workweek" concept established in

28

1   Klinghoffer for FLSA minimum wage violations.  See Adair v. City of Kirkland, 185 F.3d

2   1055, 1063 (9th Cir. 1999) (stating that "The district court properly rejected any minimum

3   wage claim the officers might have brought by finding that their salary, when averaged

4   across their total time worked, still paid them above the minimum wage."); accord Hensley

5   v. MacMillan Bloedel Containers, Inc., 786 F.2d 353, 357 (8th Cir. 1986); Dove v. Coupe,

6   759 F.2d 167, 172 (D.C. Cir. 1985); Blankenship v. Thurston Motor Lines, 415 F.2d 1193,

7   1198 (4th Cir. 1969).  While § 206 of the FLSA speaks of an hourly wage, an employer's

8   failure to compensate an employee for particular hours worked does not necessarily violate

9   the minimum wage provision.  See Dove, 759 F.2d at 171. That is because the workweek as

10  a whole, not each individual hour within the workweek, determines whether an employer has

11  complied with § 206(a). Id.; see 29 C.F.R. § 776.4(a) ("The workweek is to be taken as the

12  standard in determining the applicability of the Act.").  Thus, no minimum wage violation

13  occurs so long as the employer's total wage paid to an employee in any given workweek

14  divided by the total hours worked in the workweek equals or exceeds the minimum wage

15  rate.  See Adair, 185 F.3d at 1062 n.6.

16          Even though Plaintiffs may allege in conclusory fashion that they were paid less than

17  minimum wage, their complaints pertain to examples of non-tipped tasks (side work) that

18  IHOP asked them to perform that were related to their occupation as a server. (See Montijo,

19  Doc. 23; Colunga, Doc. 1; and Sheehan, Doc. 1.) Such allegations do not state a minimum

20  wage claim since the pleading never alleges that during any particular workweek, IHOP paid

21  them less than the Arizona minimum wage.  See Adair, 185 F.3d at 1062.  FLSA minimum

22  wage claims fail where the aggregate wages for a workweek, "when averaged across the[]

23  total time worked," is equal to or in excess of the minimum wage.  Id. at 1063.  Thus,

24  regardless of the frequency with which non-tipped work was assigned, no minimum wage

25  claim is stated against IHOP unless Plaintiffs' average wage for the workweek, including

26  tips, fell below the minimum wage.  In this case, Plaintiffs do not allege that IHOP did not

27  pay them the minimum wage for a particular workweek; therefore Plaintiffs' allegations in

28  Count 1 are subject to dismissal.

1    Even though the Court finds that Count 1 fails to state an FLSA minimum wage claim

2    as discussed, the Court will go on to discuss Plaintiffs' argument that the DOL sub-

3    regulation, § 30d00(e), limits the amount of related duties a tipped employee can perform,

4    and that if a tipped employee spends a substantial amount of time, or more than 20% of their

5    workweek engaged in non-tipping duties, they must be paid the full minimum wage for their

6    time spent performing the non-tipped work.  In support, Plaintiffs rely on Fast v. Applebee's

7    Int'l, Inc., 638 F.3d 872 (8th Cir. 2011) and Crate v. Q's Rest. Grp., No. CV 8:13-2549, 2014

8    U.S. Dist. Lexis 61360 (M.D. Fl. May 2, 2014).

9    Plaintiffs argues that that the controlling regulation, 29 C.F.R. § 531.56(e), is

10   ambiguous and therefore the Court should defer to DOL's interpretive commentary found

11   in the sub-regulation, § 30d00(e), citing Auer, 519 U.S. at 461-62 (discussing deference in

12   the context of an agency's interpretation of its own ambiguous regulation unless the

13   interpretation is plainly erroneous, inconsistent with the regulation, or does not reflect the

14   agency's fair and considered judgment on the matter in question).

15   Neither Congress, the Supreme Court, nor the Ninth Circuit Court of Appeals has

16   recognized such a purported cause of action based on the sub-regulation.  IHOP contends that

17   there was no violation of FLSA here because the sub-regulation is contrary to the statute's

18   and the regulations' clear pronouncement that employers are entitled to utilize the tip credit

19   for employees in tipped occupations.  (See, e.g., Montijo Doc. 29; see also 29 U.S.C. §

20   203(m); 29 C.F.R. § 531.56.) Furthermore, 29 C.F.R. § 531.56(e) (Dual Jobs) allows for

21   tipped food service personnel to perform related and incidental tasks to their main occupation

22   without becoming a dual job employee.  Because the controlling regulations are not

23   ambiguous, IHOP contends that the Court need not consider the DOL's informal

24   commentary, especially when such commentary does not interpret the regulation but purports

25   to add additional requirements. (See, e.g., Montijo Doc. 29.)

26   The Court agrees with IHOP that the controlling regulations are not ambiguous;

27   therefore, the Court need not consider any DOL informal commentary.  It is for the Court to

28   determine as a matter of law whether the applicable DOL regulations are ambiguous.  See

Christensen, 529 U.S. at 588 (finding that the regulation in that case was not ambiguous); Saavedra v. Donavan, 700 F.2d 496, 500 (9th Cir. 1983) (stating that whether an ambiguity exists is a question of law).

Additionally, the Court finds that the informal commentary is not persuasive because it does not interpret the regulation but purports to add additional requirements which is the province of Congress. Since only Congress is authorized to enact laws, administrative executive agencies such as DOL violate the separation of powers principle when they enact "laws" under the guise of providing informal commentary to a regulation. The sub-regulation is not entitled to deference because DOL's commentary was not arrived at by formal adjudication or notice and comment rulemaking. Thus, giving deference to the sub-regulation leads to the anomalous result of allowing agencies to side-step the onerous rulemaking process by engaging in a two-step process. First, they publish unobjectionable, vague regulations. Then, they simply issue opinions in various forms that 'interpret' the regulation in a manner that may not have survived public notice and comment. Thus, the sub-regulation usurps the legislative rulemaking function.

Under these facts, and as previously found, the Court agrees with IHOP that regulation 531.56(e) is not ambiguous. The dual jobs regulatory framework identifies an employee performing two or more entirely distinct, non-overlapping jobs. Plaintiffs were not assigned two identifiable, separate occupations. Plaintiffs was engaged in one occupation, server. Section 531.56(e) specifically allows a server to engage in incidental related duties. Thus, the server occupation inherently includes side work. The regulation does not identify this "duties" dichotomy or cap incidental duties at 20%. Based on the regulation, the Court need not identify the duties that Plaintiffs performed in their server occupation and then classify some as related tipped duties and some as non-related non-tipped duties, and then implement a different occupational standard for the non-tipped duties as compared with their tipped occupation server duties.

Moreover, even if the Court found § 531.56(e) ambiguous, the Ninth Circuit has provided guidance regarding this Court's inquiry into the issue of any deference due to the

1   DOL sub-regulation.  In <u>Probert v. Family Centered Services of Alaska, Inc.</u>, 651 F.3d 1007,

2   1012 (9th Cir. 2011), the Ninth Circuit, relying on the authority of <u>Christensen</u>, 529 U.S. at

3   587, remarked that "it does not appear to us that the [DOL Wage and Hour Field Operations

4   Handbook] is a proper source of interpretive guidance [because] [t]he handbook itself says

5   that it 'is not used as a device for establishing interpretative policy.' [DOL Wage and Hour

6   Field Operations Handbook] Foreword at 1, available at http:// www. dol. gov/ whd/ FOH/

7   index.htm ."  Rather it is meant only to provide guidance for employees of the Wage and

8   Hour Division charged with enforcing the FLSA.  <u>See</u> <u>Barron v. Reich</u>, 13 F.3d 1370, 1372

9   (9th Cir. 1994).  DOL has never initiated an enforcement litigation against a restaurant based

10  upon the sub-regulation at issue.  <u>See</u> <u>Richardson v. Mountain Range Rest. LLC</u>, No. CV 14-

11  1370, 2015 WL 1279237 *8 (D. Ariz. March 8, 2015).

12          Continuing, the Court further finds that the sub-regulation is neither persuasive nor

13  entitled to deference for several reasons.  First, it is undisputed that the DOL's Wage and

14  Hour Division in its opinion letters regarding the dual jobs regulation has inconsistently

15  provided guidance, first taking one position, then reversing course, reversing course again,

16  then withdrawing the original position.  In a 1980 opinion letter, the DOL first opined that

17  duties performed by tipped employees after closing hours did not render them untipped

18  employees. These services included cleaning the salad bar, placing condiment crocks in the

19  cooler, cleaning the waitress station, stocking the waitress station, cleaning tables, filling salt

20  and pepper shakers, and vacuuming the dining room.  <u>See</u> Dep't of Labor Opinion Ltr., Wage

21  and Hour Div., 1980 WL 141336 (Mar. 28, 1980).  Next, in a 1985 opinion letter, the DOL

22  opined that one out of five waiters who was required to report two hours early to perform

23  set-up work, in which it was held that the salad preparation set-up work was a job

24  traditionally performed by chefs, the DOL concluded that the waiter held "dual jobs" and was

25  entitled to full minimum wage for that portion of his shift.  Dep't of Labor Opinion Ltr.,

26  Wage and Hour Div., 1985 DOLWH LEXIS 9 (Dec. 20, 1985).  Next, in a 2009 opinion

27  letter, the DOL reversed course opining that "[w]e do not intend to place a limitation on the

28  amount of duties related to a tip-producing occupation that may be performed, so long as

they are performed contemporaneously with direct customer-service duties . . ." The DOL concluded that an employer could take a tip credit for an employee in the occupation of "bar back," even though the bar back employee spent none of his time waiting on customers. The services performed by the bar back (bartender's assistant) included restocking the bar, cleaning the bar, organizing the bar, cleaning empty glasses, taking out the trash, and cleaning the floor. Because the employee was in an occupation where he received more than $30 a month in tips, he was a "tipped employee" and the employer could thus take a tip credit. Dep't of Labor Opinion Ltr., Wage and Hour Div., 2009 WL 649014 (Jan. 15, 2009). Subsequently, less than two month later, in connection with a change in the executive administration, the DOL withdrew the Jan. 15, 2009 letter. Dep't of Labor Opinion Ltr., Wage and Hour Div., 2009 DOLWH LEXIS 27 (Mar. 2, 2009).

By engaging in such an inconsistent approach in its opinions regarding the dual jobs regulation, § 531.56(e), the DOL's 1988 sub-regulation on the same issue is neither persuasive nor entitled to deference. See Christopher v. SmithKline Beecham Corp., 132 S. Ct. 2156, 2166-67 (2012) (affording no deference to the DOL's interpretation of its own regulations regarding the outside salesperson exemption because, among other things, the DOL's position had shifted over time); see also Thomas Jefferson Univ. v. Shalala, 512 U.S. 504, 515 (1994) (stating that an agency's interpretation of a regulation that conflicts with a prior interpretation is entitled to considerably less deference than a consistently held agency view).

Next, the DOL sub-regulation does not interpret § 531.56(e) but arbitrarily adds additional requirements to it, creating the rule that if incidental and related duties comprise more than 20% of a server's duties, then no tip credit may be taken for the server's time spent on such incidental or related duties. The court in Pellon v. Bus. Representation Int'l, Inc., 528 F. Supp. 2d 1306 (S.D. Fla. 2007), aff'd, 291 Fed. Appx. 310 (11th Cir. 2008), rejected the sub-regulation's approach as unworkable and inappropriate. The Court agrees with the cogent findings made by the court in Pellon. In Pellon, plaintiffs were skycaps at the Miami International Airport who argued that their employer was not allowed to take a tip credit

1    because they were required to perform duties other than assisting travelers with their luggage.

2    The Pellon court found that the skycaps were in the tipped "occupation" of skycaps and that

3    any other duties they were required to perform were incidental to receiving tips. The court

4    found that skycaps were similar to servers.  Like servers, the skycaps' duties involved many

5    tasks that did not directly earn tips. The Pellon court found that the skycaps were not

6    performing dual occupations; rather they had one occupation in which they received more

7    than $30 a month in tips.  The court rejected the sub-regulation's 20% commentary, as

8    follows:

9    However, a determination whether 20% (or any other amount)
     of a skycap's time is spent on non-tipped duties is infeasible. .
10   . Permitting Plaintiffs to scrutinize every day minute by minute,
     attempt to differentiate what qualifies as tipped activity and
11   what does not, and adjust their wage accordingly would create
     an exception that would threaten to swallow every rule
12   governing (and allowing) for tip credit for employers.

13   528 F. Supp.2d at 1313-14. The Eleventh Circuit affirmed "on the basis of the district court's

14   well-reasoned order."  See 291 Fed. Appx. 310 (11th Cir. 2008).  The Court agrees with

15   Pellon and will not give deference to a policy having the net effect of allowing a server to do

16   nothing during slow periods at a restaurant or require the restaurant to pay the server

17   additional sums to help out around the restaurant.  The law does not require that result.

18          Thus, to adopt the sub-regulation by giving it deference would require this Court to

19   set aside the constitutional principles of separation of powers, which the Court will not do.

20   Justice Thomas summarized this concern in his concurrence in Perez v. Mortgage Bankers

21   Assoc., Nos. 13-1041, 13-1052, 2015 WL 998535 *13 (U.S. March 9, 2015), where he stated

22   that giving deference to administrative interpretations of regulations requires judges to give

23   legal effect to the agency interpretations rather than to the regulations themselves. "Because

24   this doctrine effects a transfer of judicial power to an executive agency, it raises

25   constitutional concerns . . . [because it] undermines our obligation to provide a judicial check

26   on the other branches, and it subjects the regulated parties to precisely the abuses that the

27   Framers sought to prevent." Id.

28          The Court finds that Plaintiffs' allegations in Count 1 do not state an FLSA minimum

1    wage violation claim.  All Plaintiffs received their minimum wage payments for the

2    workweeks in which they were employed by IHOP. (Montijo, Docs. 30 at 2, 30-1 at 8;

3    Colunga, Docs. 29 at 2, 29-1 at 8; Sheehan, Docs. 23 at 1, 23-1 at 3.) The Court finds that

4    Plaintiffs were only performing one occupation at IHOP, the server position, not two

5    occupations.  They are not entitled to a separate minimum wage payment from IHOP for

6    hours performed doing side work related to their server occupation.  Montijo's proposed

7    SAC and Colunga's and Sheehan's proposed FAC do not state an FLSA minimum wage

8    violation for Count 1.  Under their proposed allegations for Count 1, the Court finds that they

9    were only performing one occupation, the server position, not two occupations.  Therefore

10   allowing the filing of Plaintiffs' proposed Count 1 would be futile, and will be denied.

11          *Plaintiffs' Count 2*

12          With regard to Plaintiffs' Count 2, the Court has already considered, discussed and

13   determined as a matter of law that 29 C.F.R. § 531.56(e) is not ambiguous as it relates to

14   servers performing incidental duties (side work) in addition to their normal duties as a server.

15   As with Count 1, Plaintiffs' performance of the side work that is described in Count 2 does

16   not mean that they were performing the duties of a different job classification. Therefore, as

17   a matter of law, for the reasons previously discussed, the Court will find that Count 2 is also

18   without merit.

19          At issue in Count 2, Plaintiffs allege that they performed non-tipped non-related

20   duties, such as:

21          taking out trash, scrubbing walls, deep cleaning the pass bar, deep cleaning the
             floors, removing booths and cleaning behind and around them, sweeping
22          carpet throughout the entire restaurant, organizing and cleaning and deep
             cleaning booster seats and high chairs, mopping, rolling out rugs from the
23          hallways and front lobby to sweep clean the rugs and hard floors, cleaning and
             deep cleaning both restrooms, deep cleaning chair bottoms and legs, cleaning
24          vents, cleaning windows, and dusting.

25   (See, e.g., Montijo, Doc. 23 at 7.) Plaintiffs contend that the amount of IHOP's required non-

26   related non-tipped duties took them out of the classification of server and therefore they

27   argue that they are entitled to minimum wage for their performance of those duties.  (See,

28   e.g., Montijo, Doc. 31 at 3-4.) As graveyard servers, Plaintiffs state that generally they might

be the only non-kitchen employee present. (Id. at 4.)[6]  As such, the graveyard server would generally be responsible for bussing all tables, hosting, and performing all cleaning, preparation, and maintenance work. (Id.) According to Plaintiffs, the graveyard server was also responsible for completing the entire "side work" chart, which in non-graveyard shifts would be split among all servers. (Id.)  Plaintiffs argue that they were in a position particularly vulnerable to engaging in a non-tipped occupation given the fact that they were in fact tipped employees.  (Id.)

IHOP maintains that a server's occupation involves side work, including but not limited to the cleaning duties required for its graveyard servers. (See, e.g., Montijo, Doc. 35 at 2.)  IHOP reiterates that under the FLSA and its regulations, a tip credit is permitted for a tipped occupation; it is not based on tipped or nontipped duties. (Id.)  IHOP objects to the Plaintiffs' suggestion that this Court parse their duties, classify them between tipped and non-tipped, then further classify them between relating to the server position and not relating to the server position. (Id.)  According to IHOP, such a parsing of the server occupation is not required or supported by the FLSA or its regulations. (Id.)  Rather, a server's occupation includes the duties which Plaintiffs claim were non-related non-tipped duties.  (See, e.g., Montijo, Doc. 30-1 at 21-25.)

The Court agrees with IHOP.  The Court finds that a server's occupation involves side work, including the miscellaneous cleaning duties required for its graveyard servers.  The server's performance of incidental side work does not mean that a server is performing another job classification.  It is undisputed that these tasks were regularly assigned to IHOP's servers, were part of the Server Job Description, and were included in the Server Station Learning Guide.  (See Montijo, Doc. 30-1 at 3, 6, 32-34, and 36-70; Doc. 32 at 2.)  IHOP is entitled to take the tip credit for the entirety of the tipped server occupation.  Thus, under Plaintiffs' allegations for Count 2, the Court finds that they were only performing one

---

[6]IHOP notes that Plaintiffs worked some Friday and Saturday shifts which are normally staffed with more than two servers.  (See Montijo, Doc. 36 at 2.)

occupation, the server position, not two occupations.  Furthermore, allowing the filing of Plaintiffs' proposed Count 2 would be futile, and will be denied.  As the Court has already remarked, it will not give deference to a policy having the net effect of allowing a server to do nothing during slow periods at a restaurant, i.e. a graveyard shift, or require the restaurant to pay the server additional sums to help out around the restaurant.  The law does not require that result.

<em>Plaintiff Montijo's Motion for Partial Summary Judgment</em>

Montijo focuses on the cleaning duties that IHOP required of its servers and argues that because IHOP required her to regularly and consistently perform non-tipped labor allegedly unrelated to her tipped occupation, including, but not limited to, cleaning restrooms, floors, walls, toilets, sinks, and mirrors in both the men's and women's restrooms; scrubbing walls; sweeping carpet; cleaning air vents and mopping and scrubbing floors, she was misclassified only as a server because she was performing dual occupations.  (Doc. 37 at 3.)  Montijo contends that IHOP overreaches the scope of the tip credit by requiring that cleaning restrooms is somehow incidental to and part of the job of server.  (Id. at 4.)  According to Montijo, the actual issue is IHOP's clear incentive to pay its servers at the tip credit rate in order to avoid paying janitors nearly twice as much at minimum wage to perform the same labor.  (Id.)  In support, Montijo cites Fast v. Applebee's Intern., Inc., No. 06-4146, 2010 WL 816639, *6 n.7 (W.D. Mo. March 4, 2010)  (stating that "[t]here is no reasonable argument that cleaning bathrooms is related to occupations where food and beverages are handled even if both the bathroom and the food promote a customer's enjoyment of the restaurant."), aff'd on appeal, Fast v. Applebee's Intern., Inc., 638 F.3d 872 (7th Cir. 2012).

IHOP rejects Monitjo's argument that restaurants should either employ separate and additional personnel to perform distinct tasks segmented among persons fulfilling separate occupations or have the restaurants and their employees separately track and record on a task-by-task basis the amount of time devoted to various job tasks throughout an employee's shift based upon a determination of whether or not a task is deemed to be related to the

position of being a server. (Doc. 39 at 3-4.)  IHOP states that it is common in restaurants to have a server walk back into a restroom on a periodic basis in order to determine whether or not the restroom remains clean or to perform any required cleaning task, such as wiping off the sink or picking up paper towels off the floor, etc. (Id. at 4.)  Similarly, if a customer spilled a drink in the hallway or on the floor in the common area between tables it is common for a server to quickly mop it up. (Id.)  IHOP contends that based on Montijo's argument, it would have to determine whether the momentary task of doing a quick mopping of the floor or checking or cleaning the restroom is non-tipped maintenance work that must be paid at minimum wage, not the tip credit rate. (Id.)  IHOP contends that it impractical to attempt to monitor and record on a minute-by-minute basis the time spent in each of the tasks performed by servers in restaurants. (Id.)  Furthermore, IHOP argues that the total restaurant experience is a part of the service that generates tips for servers. (Id.)  If spillage on the floor in a common area of the restaurant is left uncleaned or restrooms are not properly maintained, tips for servers would undoubtedly be adversely affected. (Id.)

The Court agrees with IHOP that the server occupation and its side work necessarily includes cleaning duties in a restaurant.  Montijo's suggestion of a system requiring that servers keep track of their tasks on a minute-by-minute basis and then determine tipped/non-tipped and related/non-related to the server occupation in order to determine wage payments is unworkable. See Pellon, 528 F. Supp. 2d at 1314 (finding that the system of accounting of every minute of a skycap's time spent on tipped/untipped duties infeasible).  The Court disagrees with Montijo's argument that IHOP had a clear incentive to pay its servers at the tip credit rate in order to avoid hiring and paying a janitor or janitors minimum wage to perform the cleaning duties.  The Court takes as true Montijo's statement that the graveyard shift was usually not very busy with customers, and that she had more time to perform side work.  (Doc. 30-1 at 21.) The Court also takes as true Montijo's statement that, as a graveyard server, she performed more cleaning duties that her morning or afternoon counterparts.  But based on Montijo's own estimates, she only spent 10 to 20 minutes each shift cleaning and restocking restrooms, which is certainly not much time required during a

regular work shift. (Doc. 30-1 at 25-26.) Such a minimal time commitment is just as IHOP characterized it–side work. Furthermore, the cleaning tasks regularly assigned to IHOP's servers were part of the IHOP Server Job Description and were included in the IHOP Server Station Learning Guide. (Doc. 30-1 at 3, 6, 32-34, and 36-70; Doc. 32 at 2.)

Importantly, it is undisputed that Montijo was properly paid minimum wage for all of her employed workweeks at IHOP. The Court will deny Montijo's motion for partial summary judgment arguing that IHOP was not entitled to take the tip credit for the time Montijo spent performing duties allegedly unrelated to her tipped occupation.

**CONCLUSION**

Plaintiffs' suggestion that this Court give credence to support and to adopt the DOL sub-regulation's 20% rule is unmerited. The Court has found that this sub-regulation is in derogation of controlling federal regulations and usurps the legislative function. Accordingly, on the basis of the foregoing,

**IT IS HEREBY ORDERED** in CV 14-264-PHX-SMM, denying Plaintiff Jesus Analy Benitez Montijo's motion for leave to amend her First Amended Complaint. (Doc. 28.) Because the Court has found Montijo's Counts in her SAC are constitutionally and statutorily meritless, and thus futile, the Court will not grant leave to amend Counts 1 or 2.

**IT IS FURTHER ORDERED** granting IHOP's Motion for Partial Summary Judgment. (Doc. 29.) Counts 1 and 2 in Montijo's First Amended Complaint are denied and dismissed with prejudice. Montijo's Count 3 remains.

**IT IS FURTHER ORDERED** denying Montijo's Motion for Partial Summary Judgment. (Doc. 37.)

**IT IS HEREBY ORDERED** in CV 14-265-PHX-SMM, granting in part and denying in part Plaintiff Sydney Colunga's second motion for leave to amend her Complaint. (Doc. 28.) The Court denies Colunga's motion for leave to amend Counts 1 and 2 for failure to state a claim upon which relief may be granted. Because the Court has found Colunga's claims are constitutionally and statutorily meritless, and thus futile, the Court will not grant leave to amend Counts 1 or 2; the Court grants Colunga's motion for leave to amend to add

1   Count 3.

2      **IT IS FURTHER ORDERED** granting in part and denying in part IHOP's Motion

3   for Summary Judgment. (Doc. 29.) IHOP's motion for summary judgment is granted as to

4   Counts 1 and  2, but denied as to Count 3.  Counts 1 and 2 are denied and dismissed with

5   prejudice.

6      **IT IS FURTHER ORDERED** denying as moot Colunga's first motion for leave to

7   amend her Complaint.  (Doc. 26.)

8      **IT IS FURTHER ORDERED** in CV 14-464-PHX-SMM, denying with prejudice

9   Plaintiff Crystal Sheehan's motion for leave to amend her Complaint. (Doc. 24.)  Because

10  the Court has found Sheehan's claims in her proposed FAC are constitutionally and

11  statutorily meritless, and thus futile, the Court will not grant leave to amend Counts 1 or 2.

12     **IT IS FURTHER ORDERED** granting IHOP's Motion for Summary Judgment.

13  (Doc. 22.)  Plaintiff Sheehan's Complaint is terminated with prejudice.  The Clerk of Court

14  shall terminate No. CV 14-464-PHX-SMM, and enter judgment for Defendant.

15     DATED this 30th day of March, 2015.

16

17

18                          Stephen M. McNamee
                    Senior United States District Judge
19

20

21

22

23

24

25

26

27

28